UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICK BIRDSELL,

    Plaintiff,                                Hon. Ellen S. Carmody

v.                                                       Case No. 1:16-CV-1390

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title II of the Social Security Act. The parties subsequently agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons articulated herein, the Commissioner's decision is **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on the date his insured status expired. (PageID.88). He successfully completed high school and worked previously as a garbage truck driver, semi-truck driver, drywall finisher, meat cutter, and office manager/cable supervisor. (PageID.88). Plaintiff applied for benefits on December 20, 2012, alleging that he had been disabled since December 25, 2011, due to depression and various shoulder impairments. (PageID.317-23, 365). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.185-266).

On October 23, 2013, Plaintiff appeared before ALJ Donna Grit with testimony being offered by Plaintiff and a vocational expert. (PageID.98-137). In a written decision dated January 10, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.200-12). The Appeals Council remanded the matter on the ground that the ALJ's decision was not supported by the record. (PageID.217-20).

On September 10, 2015, ALJ Grit conducted a second administrative hearing at which Plaintiff and a vocational expert testified. (PageID.138-83). In a written decision dated December 24, 2015, the ALJ again determined that Plaintiff was not disabled. (PageID.72-90). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (PageID.32-38). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2015. (PageID.74). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) obesity; (2) status-post bilateral shoulder surgeries; (3) degenerative changes, right shoulder; (4) chronic pain; (5) asthma; (6) degenerative changes and trochanteric bursitis, left hip; and (7) depression/anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.75-77).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform work subject to the following limitations: (1) he can lift/carry and

5

push/pull 10 pounds occasionally and less than 10 pounds frequently; (2) during an 8-hour workday, he can sit and stand/walk for six hours each; (3) he cannot crawl or climb ladders, ropes, or scaffolds; (4) he can frequently stoop, crouch, kneel, and climb ramps/stairs; (5) he cannot perform overhead work with his right upper extremity; (6) he cannot perform frequent overhead work with his left upper extremity; (7) he must avoid all exposure to vibration, extreme cold, and dampness; (8) he must avoid more than occasional exposure to fumes, dusts, gases, odors, poor ventilation, and dangerous moving machinery; (9) he cannot work at unprotected heights; (10) he can understand, remember, and perform simple tasks; and (11) he can make simple work-related decisions and adapt to routine changes in the workplace. (PageID.77).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 520,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations

notwithstanding. (PageID.169-74). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.        The ALJ's Credibility Assessment is not Supported by Substantial Evidence**

At the second administrative hearing, Plaintiff testified that his ability to function was more limited than the ALJ recognized. (PageID.144-69). The ALJ, however, discounted Plaintiff's allegations on the ground that Plaintiff's allegations "are not entirely credible." (PageID.77-79). Plaintiff argues that he is entitled to relief because the ALJ's assessment of his credibility is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the

7

> objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v.*

*Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ's assessment of Plaintiff's credibility falls short because it is premised upon a selective citation to the record, a mischaracterization of much of the record, and a failure by the ALJ to recognize the deterioration in Plaintiff's condition subsequent to her initial decision. For example, on January 28, 2013, Plaintiff completed a report in which he described his ability to function. (PageID.399-410). In this report, Plaintiff reported that he could walk "maybe a half mile." (PageID.401). Treatment notes dated October 17, 2012, indicate that Plaintiff was then riding a bicycle for 30-60 minutes three times weekly. (PageID.578). In her December 24, 2015 decision, the ALJ cited to this evidence as support for her decision to discredit Plaintiff's testimony offered at the September 10, 2015 hearing. (PageID.79).

The ALJ's reliance on this evidence, however, is unpersuasive. The ALJ ignored Plaintiff's assertion in a June 29, 2015 function report that he was unable to walk "for any amount of time" unless he was able to "hold [his shoulder] close to [his] body." (PageID.476). The ALJ ignored Plaintiff's testimony at the second hearing that he was no longer able to ride a bicycle

9

because his physical condition had deteriorated. (PageID.151-53). These assertions by Plaintiff are consistent with the medical record which indicates that Plaintiff's condition deteriorated following the ALJ's initial decision. Prior to the ALJ's initial decision, Plaintiff underwent several shoulder surgeries. (PageID.493-94, 498-99, 606, 647-48). Following the ALJ's initial decision, however, Plaintiff's condition deteriorated necessitating yet another shoulder surgery. (PageID.734-36, 765-67, 851-52). The ALJ appears to have ignored this evidence.

In support of her decision to discredit Plaintiff's testimony, the ALJ also stated that "the evidence also showed that he overused his medication despite a conversation with a physician that he should not do so." (PageID.77). In support of this assertion, the ALJ cited to a March 18, 2014 treatment note by Edwin Kremer, Ph.D. (PageID.77, 733). There is nothing in this treatment note, however, indicating that Plaintiff was overusing or misusing his medication. (PageID.733). Rather, Dr. Kremer noted that he emphasized to Plaintiff "the importance of balance between pharmacotherapy and behavioral management." (PageID.733). While it is perhaps not unreasonable to interpret Dr. Kremer's statement as suggesting that Plaintiff was "overusing" his medication, it is just as likely that Dr. Kremer, apparently trained in psychiatry rather than medicine, simply believed that Plaintiff would benefit from a greater emphasis on "behavioral management" techniques, an interpretation which does not rely on, or imply, a conclusion that Plaintiff was "overusing" his medication. That the ALJ adopted an interpretation of Dr. Kremer's statement neither compelled by logic nor supported by the record constitutes a mischaracterization of the record which further detracts from the supportability of her credibility assessment.

In further support of her credibility assessment, the ALJ, again citing to the function report Plaintiff completed in January 2013, stated "[Plaintiff] admitted he played cards daily, shopped for groceries on a weekly basis, used a computer, and prepared his own simple meals."

(PageID.78). The ALJ's characterization of Plaintiff's reported activities is misleading and inaccurate. While Plaintiff acknowledged performing, certain limited activities, he indicated that he performed such either for very limited periods of time or completely with his left arm. (PageID.118, 122, 399-410). The ALJ's statement that, "[u]ndoubtedly, such activities would have required the use of [Plaintiff's] right arm, which diminishes the credibility of his report of intense pain," (PageID.78), is little more than unsubstantiated speculation. The ALJ also ignored the function report Plaintiff completed in June 2015, in which he asserts that his ability to function has further diminished. (PageID.472-78). As previously noted, this particular assertion is consistent with the medical record.

Finally, the ALJ's assessment of Plaintiff's hunting and fishing activities is even less persuasive. At the initial administrative hearing, the following exchange occurred between Plaintiff and his attorney:

> Q You testified, initially, that you had fished at some point this year.
>
> A Mm-hmm.
>
> Q Is your fishing or your ability to fish different than it used to be?
>
> A It is, drastically.
>
> Q Could you explain that a little bit?
>
> A I grew up on the water. I had a boat at the age of ten. Fishing is something that kept me out of trouble all the years when I was younger, growing up. And love to bass fish. I love to cast. I love the art of fooling a fish into striking something that isn't real. Can't cast anymore. And now I do more - - when I go out, we just pan fish. Just drop a line over the boat and fish down by the bottom.
>
> But that's gotten to the point now where it causes me so much pain, you know. I go out for a couple hours with somebody, and it causes me so much pain that the next two

or three days I can't do anything. So I'm kind of pulling away from it.

Q When you're fishing in a boat, does someone help you with the boat?

A Yes. Yeah, I never go by myself.

Q Okay. And why don't you ever go by yourself?

A I never go out in a boat by myself. I always have someone with me in case something happens, to put the anchor up and down, which I cannot do. If something happened, and I couldn't row the boat if the motor were to stop.

Q And is that something that is new to you since your shoulders - -

A Yes.

Q Okay.

A Yeah, yeah.

Q You had previously fished on your own and had no issues or - -

A Well, I've always had friends/family to fish with. But it didn't stop me. If they weren't around, I always went. It just - - it was part of me.

Q Okay.

A But now I have to have somebody with me.

Q Okay. And in terms of the hunting, you said you had recently hunted with a crossbow.

A Mm-hmm.

Q Is that something that's different than - - I have limited knowledge on this. So it's something different - -

A Yeah.

Q - - than a regular bow?

A Yeah. I haven't been able to draw the regular bow back in quite some time. Had given up on hunting, or on being able

> to hunt. But last year my wife bought me a crossbow.
> Decided she wanted me in the woods. Get out of the house.
> And me and my boys were - - or my youngest son was still
> hunting a lot. And so I was able to get out with him, and I
> hunt out of a blind and use a prop for the crossbow so I didn't
> have to lift it. It's always propped up. Now - - except I
> hunted - - it was a few weeks ago when my son was home.
> But now I don't go unless I have somebody to go with.
>
> Q   And why is that?
>
> A   I can't - - if something were to happen. If I were to shoot it
> here, I couldn't take care of it. I couldn't drag it, I couldn't
> do what needs to be done in the field.

(PageID.123-25).

At the second administrative hearing, the following exchange occurred between Plaintiff and his attorney:

> Q   Rick, I, in part, want to pick up where we left off at the last
> hearing, which was approximately two years ago. So - -
>
> A   Mm-hmm.
>
> Q   - - we just want to update the Judge on your daily activities
> and things like that. And I do want to clarify a couple of
> things. We had some issues or questions about your
> hunting and fishing activities.
>
> A   Mm-hmm.
>
> Q   So in terms of the hearing, again, remember the hearing was
> about two years ago. What have you done in terms of those
> type of recreational activities?
>
> A   I have not hunted at all. It's gotten to the point where - - I
> think in the previous hearing we talked about my wife had
> bought me a crossbow. A crossbow is - - the particular one
> she picked up for me has a hand crank to draw it back. You
> don't draw it back by hand, 'cause I cannot do that. Two
> years ago would've been the last time that I was able to crank
> that back on my own. So then the only hunting I did was
> sitting in the ground blind with my son when he was home,
> when he was willing to take me out.

13

Don't plan on trying it this year. I just can't sit still, the pain's gotten so bad in my hip. In regard to the fishing - -

Q   I'm sorry, can I ask you one other question, Rick?

A   Yes.

Q   Okay. Now you said that there was a crank to essentially draw the bow back. Is that - -

A   Correct.

Q   - - correct?

A   Mm-hmm.

Q   Okay. When you saw whatever animal was approaching, what did you do? Did you pull the actual instrument up to shoot the - -

A   Gotcha. When sitting in a tent, a ground blind, with my son, the crossbow was actually set on a - - what you call a tripod. So the butt of the bow would be sitting on my leg, and I would lift up maybe a pound, if an animal would come in that we would choose to take. So it's a matter of picking up the very light end, putting the scope on the animal, and pulling a trigger. This was done to get me at least back out in the woods.

Q   How much did the bow, itself, weigh?

A   The whole bow weighs just over seven pounds.

Q   And you said when your son took you out. Do you ever go on your own, or did you ever go on your own?

A   It's been a long time. It's been a number of years - -

Q   Okay, I'm sorry - -

A   - - that I've been able to go on my own.

Q   Okay. Well, at least since 2011, the date that you stopped working?

A   No.

Q   Okay.

A   No, I have not.

Q   Okay. Okay, and you really want to think about your questions and answers - -

A   Yeah.

Q   - - okay, since that date, for the most part, so - -

A   Correct.

Q   So your testimony at the last hearing was that you had gone out with your son a few weeks before the hearing with that crossbow. Okay. Did he carry that bow out for you, out to - -

A   He did.

Q   - - your ground blind area?

A   Yes, he did.

Q   Okay. Is that something he normally does?

A   Yes.

Q   Why don't you do it yourself?

A   It's heavy.

Q   Okay.

A   To put it on my shoulder, it's heavy. Even the seven-and-a-half pounds, it does create pain.

Q   Okay. And I'm sorry, I did cut you off. We're moving on to fishing. Are you fishing at the present time?

A   I am not.

Q   Okay. When was the last time you went fishing?

A   My wife and I went out on the boat about a month ago, for a couple of hours.

Q   Okay. And can you describe your activity, then, that time?

A   We went out. We floated around out in the sun. We put a line down over the side of the boat, and all of our poles are

>   what they call ultra-lights. They're very, very light. Ounces. Real light line. Just letting it sit on the edge of the boat, and we allow the bait to go down near the bottom, where we were finding the fish on our sonar. Caught a few. They were very small. Biggest fish might've been ten inches and weighed half-a-pound.
>
> Q   Okay, now you said you floated the line under the boat. What does that mean?
>
> A   Just drop it straight down over the edge of the boat.
>
> Q   You're not using a casting motion or - -
>
> A   No. No casting.
>
> Q   Okay.
>
> A   No casting any longer.
>
> Q   Okay. Have you done any type of that casting type fishing - -
>
> A   No.
>
> Q   - - since your last hearing?
>
> A   I have not.

(PageID.147-50).

In assessing Plaintiff's very limited hunting and fishing activities, the ALJ stated that "the issue is not whether the claimant was fully capable of performing these activities, it is the fact he performed these activities at all, regardless of how limited." (PageID.78). Judging by this statement, the ALJ believes that a claimant must forego any and all hobbies and recreational activities before he can qualify for disability benefits. Authority supporting this extreme interpretation of the Social Security Act has not been presented to the Court.

To the contrary, the fact that Plaintiff is able to perform a limited range of activity for short periods of time is not inconsistent with a claim of disability. *See, e.g., Leos v. Comm'r of Soc. Sec.*, 1996 WL 659463 at *2 (6th Cir. 1996) (the fact that a claimant performed limited

16

nonstrenuous activities does not preclude a finding that she experiences pain to a disabling degree); *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) ("working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity"); *Lipke v. Astrue*, 575 F.Supp.2d 970, 982 (W.D. Wisc. 2007) (that a claimant may be able to "engage in sporadic physical activities" is not inconsistent with disability); *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a "total basket case"). More importantly, Plaintiff's testimony regarding his limited hunting and fishing activities is not inconsistent with his allegations of physical impairment and limitation.

In sum, the ALJ's rationale for discounting Plaintiff's testimony is unpersuasive and not supported by substantial evidence.

**II.        Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not

exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

While the Court is reluctant to interfere in the operations of the Social Security Administration, this case appears to be one in which the assistance of a medical expert could be beneficial on remand. While the record reveals that Plaintiff has experienced several shoulder surgeries, the record is less clear regarding the nature of Plaintiff's shoulder impairments and the extent to which such can reasonably be expected to limit Plaintiff. Furthermore, in light of observations by care providers that Plaintiff is "predisposed towards disability," (PageID.564), and exhibits "some histrionic properties," (PageID.603), further evidence concerning Plaintiff's emotional status might also be appropriate.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Dated: December 28, 2017   /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge